IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| *In re:* | ) | |
| | ) | |
| Jeremy J. Wilson, | ) | Bankruptcy No. 16 BK 18319 |
| | ) | |
| Debtor. | ) | Honorable Timothy A. Barnes |
| _____ | ) | _____ |
| | ) | |
| Jeremy J. Wilson, | ) | |
| | ) | |
| Appellant, | ) | Case No. 23 CV 344 |
| | ) | |
| v. | ) | Honorable LaShonda A. Hunt |
| | ) | |
| Southern Illinois University Carbondale, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | _____ |

**MEMORANDUM OPINION AND ORDER**

Debtor/Appellant Jeremy J. Wilson ("Wilson") appeals an order of the bankruptcy court denying his motion for sanctions against Appellee Southern Illinois University Carbondale ("SIU") for violating the discharge injunction. At issue here is whether Wilson's debt to SIU, which arises from an overpayment refund, is a loan excepted from discharge under 11 U.S.C. § 523(a)(8). For the reasons discussed below, the decision of the bankruptcy court is affirmed.

**BACKGROUND**

In summer 2015, Wilson enrolled in graduate school at SIU. (Jan. 18, 2023 Tr. at 14, Dkt. 8; R. at 183, 186, Dkt. 5-2). He applied for a federal direct loan to cover those educational costs. (Jan. 18, 2023 Tr. at 14; R. at 175, 183, 186). In June 2015, SIU received $6,250 from the issuing federal agency for Wilson. (R. at 175, 183). After deducting $67 in fees, SIU credited $6,183 to Wilson's student account, applied $3,598.41 to outstanding tuition and fees, and transferred the

1

overpayment balance of $2,584.59 to Wilson's personal checking account. (Jan. 18, 2023 Tr. at 14; R. at 175, 184, 187). Sometime during the middle of the summer semester, Wilson withdrew from SIU for personal reasons. (R. at 132, 184). As a result, the entire student loan amount was removed from his account and SIU was required to return those funds to the Federal Direct Loan Servicer. (Jan. 18, 2023 Tr. at 14; R. at 184).[1] SIU notified Wilson that since he was ineligible for student aid due to his early withdrawal, he owed the school $6,183. (R. at 188).

Less than a year later, Wilson filed a chapter 7 bankruptcy petition. (R. at 2, 7). He received an order of discharge in August 2016, which the bankruptcy court sent to all of his creditors, including SIU. (*Id*. at 107-113). SIU ceased collection attempts for the portion of the student loan that was applied to Wilson's tuition and fees but continued to pursue the overpayment refund it sent to Wilson. (*Id*. at 133, 176). In September 2022, SIU initially denied a transcript request from Wilson, citing the unpaid overpayment refund that was not discharged in the bankruptcy, but eventually relented. (*Id*.)

In light of the ongoing collection efforts by SIU, Wilson sought to reopen his bankruptcy case to seek sanctions for violation of the discharge injunction. (*Id*. at 121-123). The bankruptcy court reopened the case and Wilson filed a motion to recover damages from SIU for attempting to collect a discharged debt. (*Id*. at 124, 132-141). After full briefing, the bankruptcy court held a hearing on January 18, 2023, and orally ruled that the overpayment refund was a nondischargeable "loan" pursuant to section 523(a)(8), as interpreted by *In re Chambers*, 348 F.3d 650, 653 (7th Cir. 2003). (Jan. 18, 2023 Tr. at 14-16.)

---

[1] Wilson challenges the supporting affidavit submitted by SIU in opposition to his motion as "self-serving" and insufficient to prove that SIU actually repaid those funds. (Appellant Br. at 6, Dkt. 13). As explained *infra*, the Court disagrees.

2

Wilson timely appealed the final decision of the bankruptcy court and this matter is fully briefed. Upon review of the briefs, the Court concludes that they adequately present the issues and the relevant case law, and oral argument is unnecessary.

## STANDARD OF REVIEW

District courts have jurisdiction to review decisions of the bankruptcy court pursuant to 28 U.S.C. § 158(a). *In re Altheimer & Gray*, 393 B.R. 603, 606 (N.D. Ill. 2008). When adjudicating bankruptcy appeals, this Court applies a dual standard of review: the bankruptcy court's findings of fact are reviewed for clear error, while its conclusions of law are reviewed *de novo. Id.* "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Rose v. Pavletich*, 621 B.R. 227, 229 (N.D. Ill. 2020). The *de novo* standard requires the district court to make an independent examination of the bankruptcy court's judgment without giving deference to that court's analysis or conclusions. *In re S.M. Acquisition Co.*, No. 05 CV 7076, 2006 WL 2290990, at *2 (N.D. Ill. Aug. 7, 2006).

## DISCUSSION

A primary purpose of the bankruptcy discharge is to afford debtors a fresh start. *Chambers*, 348 F.3d at 653. Thus, dischargeability exceptions are confined to those plainly expressed in the Bankruptcy Code and narrowly construed in favor of debtors. *Id.* at 654. Student loans are among the debts excluded from the general discharge through section 523(a)(8), which provides that:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

(8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for—

3

>> (A)(i) an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
>
>> (ii) an obligation to repay funds received as an educational benefit, scholarship or stipend; or
>
>> (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual[.]

11 U.S.C. § 523(a)(8).

Before the bankruptcy court, the parties disputed whether SIU's refund of excess student loan proceeds to Wilson constituted a nondischargeable loan. Their arguments largely centered around three cases: *Chambers*, a Seventh Circuit decision, and *In re Oliver*, 499 B.R. 617 (Bankr. S.D. Ind. 2013) and *In re Cross*, No. 13 B 32933, 2018 WL 1448669, at *1 (Bankr. E.D. Wis. Mar. 22, 2018), two out-of-district bankruptcy court decisions. The Court begins by examining each of those rulings.

In *Chambers*, the debtor argued that unpaid tuition and fees she owed to a university were discharged in her bankruptcy. 348 F.3d at 652. Interpreting the statutory language[2] and relying on cases from the Second Circuit and Third Circuit, the Seventh Circuit held that "nonpayment of tuition qualifies as a loan in two classes of cases: where funds have changed hands, or where there is an agreement . . . whereby the college extends credit." *Id*. at 657 (citing *Boston Univ. v. Mehta (In re Mehta),* 310 F.3d 308, 314 (3d Cir. 2002); *Cazenovia Coll. v. Renshaw (In re Renshaw),* 222 F.3d 82, 90 (2d Cir. 2000)).[3] Applying that test, *Chambers* determined the debt was not a loan

---

[2] *Chambers* analyzed a prior version of the statute. 348 F.3d at 653. The parties have not identified and the Court is not aware of any appreciable difference between the term "loan" as used in the prior version of § 523(a)(8) or the current version of § 523(a)(8)(A)(i).

[3] Like *Chambers*, *Renshaw* and *Mehta* also involved unpaid tuition debts. In *Renshaw*, the Second Circuit held that two students who "unilaterally decided not to pay tuition when it came due" did not receive an educational loan or educational benefit overpayment within the meaning of the section 523(a)(8). 222 F.3d at 88, 92. Similarly, in *Mehta*, the Third Circuit concluded the debtor's "delinquent tuition" was not a loan. 310 F.3d at 310, 316.

because "[n]o funds changed hands, nor [was] there evidence of a prior or contemporaneous agreement to pay tuition at a later date in exchange for an extension of credit. Rather, [the debtor] incurred a debt on an open student account, attended classes in spite of the debt and failed to pay her bill." *Id*. *Chambers* therefore established a framework for distinguishing an educational loan, which may be excepted from discharge, from a mere unpaid debt to the university, which is not.

*Oliver* involved a similar scenario with a debtor who owed unpaid tuition on a student account and subsequently sought sanctions against the university in the bankruptcy court. 499 B.R. at 619-20. That debtor registered for classes, had federal student loans applied to her account for outstanding tuition and fees, and received an overpayment refund from the university for the balance. *Id.* However, the debtor added more classes and incurred additional tuition charges that she did not pay. *Id*. First, the bankruptcy court explained that "notwithstanding the BAPCPA amendments to § 523(a)(8) made after *Chambers*," it still had to apply the *Chambers* test. *Oliver*, 499 B.R. at 624. After doing so, the bankruptcy court concluded that the unpaid tuition had not been transformed into a nondischargeable loan under section 523(a)(8). *Id*. at 624-25. The court reasoned that there was "no evidence in the record that funds changed hands as a loan from [the university] to [the debtor]. [The university] did not advance any of its own funds to or for the benefit of [the debtor]. The only money [the debtor] received from [the university] was a refund of the federal student loan proceeds that exceeded the balance [the debtor] owed [the university] at the time such proceeds were credited to her account." *Id*. at 624.

*Cross* most closely tracks the facts here. The debtor there obtained federal aid to fund her college education, and after those grants and loans were applied to her student account, she received an overpayment refund directly from the school. 2018 WL 1448669, at *1. Sometime during the semester, though, she stopped attending college and consequently lost her eligibility for

5

some of the financial aid she had already received. *Id*. In accordance with federal regulations, the college was required to and did refund to the federal government the grant and loan overpayments that the college had previously disbursed to the debtor. *Id*. The college then sent the debtor a letter advising her that she must repay the returned funds. *Id*. The debtor eventually filed for chapter 7 bankruptcy and obtained a discharge. *Id.* at *2. Nearly four years later, she complained that the college was unlawfully garnishing her wages by collecting a discharged debt. *Id*. at *1. The bankruptcy court disagreed, finding that the debt was "an obligation to repay funds received as an educational benefit, scholarship or stipend," under section 523(a)(8)(A)(ii). *Id*. It reasoned that "[t]here was an overpayment of Pell Grant and direct loans to the [plaintiff], which [the college] returned to the U.S. Department of Education for the benefit of the [debtor]. [The debtor] is obligated to repay the funds, which she initially received to finance her education at [the college]." *Id*. *Cross* did not discuss *Chambers*.

In this case, the bankruptcy court ruled that like the debtor in *Cross*, Wilson had registered at SIU and received a federal student loan. After SIU applied a portion of the loan proceeds to his outstanding tuition and fees, funds exchanged hands when the remaining balance was deposited into Wilson's personal checking account. When Wilson withdrew from school early, SIU was required to repay those funds to the Department of Education. *Id.* Consequently, the bankruptcy court concluded that the *Chambers* test had been met by SIU concerning the overpayment refund and the debt was not discharged.

On appeal, Wilson contends that the bankruptcy court erred in the following ways: (1) applying the "funds changing hands" prong of *Chambers*; (2) relying upon *Cross*; and (3) finding that SIU proved it repaid the loan funds for Wilson to the government after his withdrawal. Instead, Wilson argues, the rationale and result in *Oliver* should control here with the

6

overpayment deemed discharged. SIU, on the other hand, asserts that the bankruptcy court correctly looked to *Cross*, with virtually indistinguishable facts, even though that case did not mention *Chambers* or find that the overpayment was a "loan."

The Court acknowledges that *Chambers* does not provide specific guidance on determining when "funds have changed hands." To be fair, that was not an issue in *Chambers* where it was undisputed that the debt pertained to unpaid tuition on an open student account and the university had not transferred funds to the debtor. *Mehta* and *Renshaw*, the Circuit rulings from which *Chambers* derived its test, likewise dealt with unpaid tuition with no question about a transfer of funds. Still, the Seventh Circuit explained that it "look[ed] to the common law definition of 'loan.'" *Chambers*, 348 F.3d at 657. In other words, this is a straightforward inquiry—was there an exchange of funds that shows a loan occurred. Here, the parties agree that SIU refunded to Wilson the overpayment that consisted of the remaining balance from federal student loan proceeds, and that overpayment refund is the debt SIU seeks to collect from Wilson. SIU argues that is enough under *Chambers* and *Cross*.

But Wilson raises an interesting point—he is a borrower who obtained a student loan and signed a promissory note evincing an obligation to repay the federal government, not SIU. Therefore, he insists, the loan contemplated in *Chambers* occurs only if SIU is the lender, not an intermediary merely passing funds along to him from federal sources. For support, Wilson relies on *Oliver* and contends that it interprets *Chambers* as applying only where funds changed hands from the educational institution, as a lender, to the student, as a borrower.[4] In response, SIU argues that *Oliver* is distinguishable from this case in that, unlike the university there, SIU reimbursed the

---

[4] Although Wilson cited *Oliver* before the bankruptcy court, (R. at 189-197), the oral ruling did not address its applicability.

7

federal agency that issued the loan to Wilson. And because of that reimbursement, SIU claims, the overpayment refund is a nondischargeable student loan. SIU has the better argument.

In deciding that no funds changed hands, *Oliver* noted that "[the university] did not advance any of its own funds to or for the benefit of [the debtor]." *Id*. Here, however, SIU did transfer its own funds directly to the Federal Student Loan Servicer for the benefit of Wilson to repay the loan that Wilson was no longer eligible to receive. In addition, and significantly, *Oliver* stated that the funds that were transferred from the university to the debtor were "not the subject of the [m]otion." *Id*. at 624. That means the overpayment refund was irrelevant to the *Oliver* analysis. Indeed, the debt claimed to be nondischargeable related to unpaid tuition on an open student account, just as in *Chambers*. In contrast, Wilson concedes that "SIU stopped collection of part of its debt for the $3,665.10 which was applied to [his] tuition." (Appellant Br. at 3). Accordingly, *Oliver* is easily distinguishable and does not help Wilson.

As for *Cross*, it is true that the bankruptcy court relied on a different statutory provision to find the overpayment refund nondischargeable. Nevertheless, the factual circumstances in *Cross* illustrate how an overpayment refund can be transformed into a loan within the meaning of *Chambers*. Wilson and the debtor in *Cross* received federal financial aid, were refunded a portion of the aid as an overpayment, and then withdrew from school and rendered themselves ineligible for aid they had already received. Notably, their actions obligated the schools to reimburse the federal government for the overpayment of student loan proceeds, which, in turn, obligated the debtors to repay the debt to their schools. Wilson ignores the reality here—SIU seeks to collect the excess funds it paid to him and for him, and that debt arises from an educational loan, not an unpaid tuition bill. The Court agrees with the bankruptcy court that the *Chambers* test is satisfied.

8

Finally, Wilson attempts to distinguish *Cross* by contending that it was undisputed that the college paid back funds to the federal source, but here, such evidence is lacking. The bankruptcy court found that "[a]fter debtor withdrew from the summer semester, just like in *Cross*, SIU [was] required to repay back the funds to the Department of Education." (Jan. 18, 2023 Tr. at 23). Upon review of the record, the Court concludes that finding was not clearly erroneous. SIU provided an unrebutted affidavit from SIU's Chief Accountant in the Office of the Bursar, stating that "As a result of Jeremy J. Wilson's withdrawal from [SIU], the entire Loan Amount was removed from his account at [SIU]. In that regard, [SIU] was required to refund the entire Loan Amount to the Federal Direct Loan Servicer." (R. at 184). Additionally, SIU submitted a letter addressed to Wilson that stated "University records indicate that you withdrew from [SIU] for Summer Semester 2015. Because your withdrawal was effective during the first 60% of the enrollment period, federal regulations require the Financial Aid Office to determine the amount of financial aid for this semester for which you are eligible and to remove any excess proceeds from your University account. . . . $6,183.00 of your Federal Direct Loan has been removed from your University account and will be returned to the Federal Direct Loan Servicer." (*Id*. at 188).

Moreover, federal regulations, of which the Court may take judicial notice, *Perez v. Staples Cont. & Com. LLC*, 31 F.4th 560, 574 (7th Cir. 2022), provide that if a student withdraws, the institution must return any unearned assistance. 34 C.F.R. § 668.22(g); *see also Cross*, 2018 WL 1448669, at *1 ("Federal Regulations provide that when a student who received assistance under the federal Pell Grant program and/or direct loan program withdraws from school, the institution must calculate the portion of funds that the student has not earned. . . . The school must return the unearned funds to the U.S. Department of Education.") (citing 34 C.F.R. § 668.22(a)(1), (3); 34

C.F.R. § 668.22(g)). Thus, Wilson's argument that SIU did not repay his loans to the government is wholly unsupported.

In sum, this is not a case like *Chambers* or *Oliver* where Wilson simply failed to pay tuition. *See also Hazelton v. UW-Stout*, No. 18 CV 159, 2019 WL 413567, at *1 (W.D. Wis. Feb. 1, 2019) (finding no loan existed where plaintiff "completed seven credits of classes but did not pay her tuition or fees"); *In re Moore*, 407 B.R. 855, 859 (Bankr. E.D. Va. 2009) ("[T]he debtor's obligation to [the law school] does not arise from an exchange or advance of funds or an agreement to borrow money and is simply that portion of his tuition bill that the debtor unilaterally decided not to pay as it became due. Thus, the debt owed to [the law school] is not a student loan for purposes of § 523(a)(8) of the Bankruptcy Code and was discharged in the debtor's bankruptcy case."). Instead, SIU is attempting to collect an overpayment refund that was deposited into Wilson's personal account. *See In re Sims*, No. 03 B 30493, 2019 WL 1410621, at *5 (Bankr. N.D. Ohio Mar. 21, 2019) ("While receiving cash is not always necessary, the fact that the [debtor] received money from [the university] for the amounts that were in excess of her tuition obligations would also support a finding that the obligations in issue qualify as loans.").

In his financial aid application, Wilson was made aware that the "[f]ailure to maintain at least 3 credit hours [would] result in all Federal Direct Stafford/Ford Loan funds being removed from [his] account." (R. at 186). Furthermore, on the application, Wilson certified that he understood that he "must enroll and continue to be enrolled for a minimum of three (3) credit hours to be eligible for Summer 2015 financial aid[,]" and that the failure to do so would result in his financial aid, including loans, being "removed in full from [his] University account." (*Id.*). So, while the funds may have originated from federal sources, pursuant to the terms set forth in Wilson's financial aid application and federal regulations, SIU later refunded the full amount of

10

the Federal Direct Loan to the government for Wilson's benefit. *See Cross*, 2018 WL 1448669, at *2 ("In accordance with federal regulations and its financial aid policies, [the college] returned the amount of funds [the debtor] did not earn to the U.S. Department of Education on her behalf, and [the debtor] remains liable to [the university] for those funds."). Therefore, the overpayment refund constitutes a loan excepted from discharge under section 523(a)(8).[5]

## CONCLUSION

For the reasons discussed above, the decision of the bankruptcy court is affirmed.

**DATED**: August 13, 2024             **ENTERED**:

*LaShonda A. Hunt*

LaShonda A. Hunt
United States District Judge

---

[5] Wilson contends that even if SIU did not waive its section 523(a)(8)(A)(ii) argument, any such argument would fail because the debt in question is not an obligation to repay funds received as an educational benefit, scholarship, or stipend. Having found that the funds at issue are a loan under section 523(a)(8)(A)(i), the Court need not consider whether the requirements of section 523(a)(8)(A)(ii) are also met.

11